IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF OHIO

EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) CASE NO. |
| | ) |
| Plaintiff, | ) JUDGE |
| | ) |
| v. | ) |
| | ) |
| $99,500.00 U.S. CURRENCY SEIZED ON MARCH 20, 2016, | ) |
| | ) |
| $107,900.00 U.S. CURRENCY SEIZED ON JUNE 17, 2016, and | ) |
| | ) |
| $57,999.00 U.S. CURRENCY SEIZED ON AUGUST 18, 2016, | ) |
| | ) |
| Defendants. | ) **COMPLAINT IN FORFEITURE** |

NOW COMES plaintiff, the United States of America, by Carole S. Rendon, United States Attorney for the Northern District of Ohio, and James L. Morford, Assistant U.S. Attorney, and files this Complaint in Forfeiture, respectfully alleging on information and belief the following:

**JURISDICTION AND INTRODUCTION**

1. This Court has subject matter jurisdiction over an action commenced by the United States under 28 U.S.C. Section 1345, and over an action for forfeiture under 28 U.S.C. Section 1355(a). This Court also has jurisdiction over this particular action under 21 U.S.C. Section 881(a)(6).

2. This Court has *in rem* jurisdiction over the defendant properties: (i) pursuant to 28 U.S.C. Section 1355(b)(1)(A) because acts giving rise to the forfeiture occurred in this district; and, (ii) pursuant to 28 U.S.C. Section 1355(b)(1)(B), incorporating 28 U.S.C. Section 1395, because the action accrued in this district.

3. Venue is proper in this district: (i) pursuant to 28 U.S.C. Section 1355(b)(1)(A) because acts giving rise to the forfeiture occurred in this district; and, (ii) pursuant to 28 U.S.C. Section 1395 because the action accrued in this district.

4. This Court will have control over the defendant properties through service of arrest warrant(s) *in rem*, which the United States Marshals Service will execute upon the defendant properties. *See*, Supplemental Rule G(3)(b) and G(3)(c).

5. On March 20, 2016, the defendant $99,500.00 U.S. Currency was seized from Samson Primm pursuant to a joint Drug Enforcement Administration (DEA) / Lorain Police Department investigation. Particularly, the seizure was made as part of a traffic stop conducted by the Lorain Police Department.

6. On June 17, 2016, the defendant $107,900.00 U.S. Currency was seized from Samson Primm pursuant to a joint DEA / Ohio State Highway Patrol (OSHP) investigation. Particularly, the seizure was made as part of a traffic stop conducted by the OSHP.

7. On August 18, 2016, the defendant $57,999.00 U.S. Currency was seized at the Huntington Lane, Cleveland Heights, Ohio, residence of Samson Primm pursuant to the execution of state search warrants. The seizure was made as part of a joint DEA / Cleveland Heights Police Department investigation.

8. The defendant properties are now in the custody of the federal government in a Seized Asset Deposit Fund Account.

9. The DEA commenced administrative forfeiture proceedings. Claims were submitted by Samson Primm, thereby requiring the filing of this judicial forfeiture action.

10. The defendant $99,500.00 U.S. Currency, the defendant $107,900.00 U.S. Currency, and the defendant $57,999.00 U.S. Currency (hereinafter, the defendant properties) are subject to forfeiture to the United States under 21 U.S.C. Section 881(a)(6) in that they constitute proceeds from illegal drug trafficking activities, and/or were used or were intended to be used in exchange for illegal controlled substances, and/or were used or were intended to be used to facilitate illegal drug trafficking activities.

### PRIOR FORFEITURES INVOLVING SAMSON PRIMM & SAMSON PRIMM'S CRIMINAL (DRUG) HISTORY

11. $26,318.00 U.S. Currency was seized from Samson Primm on April 4, 2007, in Cleveland, Ohio. By a Declaration of Forfeiture entered on August 10, 2007, this $26,318.00 was forfeited to the United States.

12. On September 26, 2007, Samson Primm entered guilty pleas to the following charges in Cuyahoga County Court of Common Pleas Case No. CR-07-493080-B: (i) Trafficking Offenses (marijuana) with firearm specification (Count 1 - felony 5), in violation of O.R.C. Sections 2925.03 and 2941.141; (ii) Carrying Concealed Weapons (Count 2 – felony 4), in violation of O.R.C. § 2923.12; (iii) Possessing Criminal Tools (Count 3 – felony 5), in violation of O.R.C. § 2923.24; and, (iv) Receiving Stolen Property (Count 4 – felony 4), in violation of O.R.C. § 2913.51. The Court imposed a one (1) year prison sentence at the Lorain Correctional Institution.

13. Also in Cuyahoga County Court of Common Pleas Case No. CR-07-493080-B, it was ordered that defendant Primm forfeit the following properties: $4,084.00 U.S. Currency, two (2) Motorola cell phones, and digital scales.

14. On September 26, 2007, Samson Primm entered a guilty plea to the following charge in Cuyahoga County Court of Common Pleas Case No. CR-07-494960-A: Having Weapons While Under Disability (Count 2 – felony 3), in violation of O.R.C. § 2923.13. Among other things, defendant Primm was ordered to forfeit one (1) Smith & Wesson 9mm handgun and two (2) cell phones.

15. On March 10, 2011, Samson Primm entered a guilty plea to the following charge in Cuyahoga County Court of Common Pleas Case No. CR-10-544229-A: Trafficking Offenses (marijuana) with forfeiture specifications (Count 2 - felony 3), in violation of O.R.C. Sections 2925.03(A)(2) and 2941.1417. The Court imposed a one (1) year prison sentence at the Lorain Correctional Institution.

16. Also in Cuyahoga County Court of Common Pleas Case No. CR-10-544229-A, it was ordered that defendant Primm forfeit the following properties: $1,507.00 U.S. Currency and four (4) cell phones.

**FORFEITURE**

17. In March, 2016, and based upon information obtained since June, 2015, the DEA began investigating Samson Primm for drug trafficking and money laundering offenses.

18. The DEA received information that Primm was scheduled for one-way air travel from Las Vegas, Nevada (LAS), to Cleveland, Ohio (CLE), on March 20, 2016.

19. At approximately 4:50 p.m. on March 20, 2016, at the CLE, a DEA Special Agent observed Primm deplane carrying a black backpack. At approximately 5:09 p.m., Primm retrieved two (2) large black suitcases and proceeded to the valet. Upon delivery of his 2015 Infinity QX80 SUV, an attendant placed both suitcases in the rear cargo area of the vehicle. At approximately 5:45 p.m., Primm departed the CLE.

20. At approximately 6:25 p.m., an officer with the Lorain Police Department (LPD) conducted a traffic stop of Primm's vehicle. The stop – for window tint violation – occurred in the area of East 21st Street and East Avenue, Lorain, Ohio.

21. The officer made contact with the owner/operator of the vehicle, who identified himself as Samson Primm. The officer advised Primm of the reason for the stop.

22. When asked "where he was headed to this evening", Primm stated "a friend's house". However, Primm could not provide an address or street where the "friend" lived.

23. While the officer was checking Primm's window with his tint meter, a second LPD officer – who had arrived on scene as backup – requested that a K-9 officer respond to the scene.

24. The window tint meter read 49%, meaning that only 49% of light was passing through the window. The legal percentage for the front driver window is 50% of light passing through the window.

25. While a warning citation was being written – and within minutes of the request for assistance - the K-9 officer and his partner "Garp" arrived on scene. Primm was advised that the K-9 officer and "Garp" were going to conduct a drug scent examination of the exterior of his vehicle. Upon being deployed, "Garp" provided a positive alert for the odor of controlled substances.

26. After "Garp" alerted on the vehicle, the two (2) black suitcases, the black backpack, and another backpack were removed from the vehicle. All four (4) bags were placed on the concrete, where "Garp" immediately alerted to a suitcase. A search of the suitcase was conducted and 18 separate stacks of money were located. The stacks of money were held together with rubber bands.

27. A large amount of currency, in bundles wrapped with rubber bands, is consistent with illegal drug trafficking activity.

28. "Garp" also alerted to the black backpack. A search of the backpack was conducted and a sum of money was located.

29. The search of the vehicle also resulted in the recovery of marijuana pieces/part of a marijuana cigarette. A field test for the presence of marijuana was conducted with positive results.

30. The total amount of currency recovered was later determined to be $99,500.00. This $99,500.00 is a defendant property in the instant case.

31. While finishing the search of the vehicle and its contents, renewed contact was made with the DEA. DEA personnel arrived on scene.

32. Following the positive K-9 alerts, Primm had been advised of his *Miranda* rights. He said he understood those rights.

33. Primm claimed to have won the money while in Las Vegas. An officer asked him "what casino he stayed at while in Las Vegas" and Primm said the Cosmopolitan. The officer then asked Primm if the Cosmopolitan was where he won the money and Primm said yes.

34. Primm was issued a warning citation for the window tint violation and a receipt for the recovered currency. He was released from the stop at this time and was advised how to contact the DEA the following day.

35. The defendant $99,500.00 was transported to the Lorain Police Department where it was turned back over to DEA personnel.

36. The breakdown of the defendant $99,500.00 was as follows: 94 ($100) bills, 22 ($50) bills, 4,233 ($20) bills, 319 ($10) bills, 228 ($5) bills, and 10 ($1) bills.

37. $20 bills frequently are used to conduct illegal drug transactions.

38. As alleged in paragraph 33, above, Primm claimed to have won the money at "the Cosmopolitan" casino while in Las Vegas. Between January, 2014, and August, 2016, Primm lost approximately $59,555.00 while gambling at the Cosmopolitan of Las Vegas.

39. On March 31, 2016, law enforcement authorities, including a DEA Special Agent, conducted a trash pull at the Huntington Lane, Cleveland Heights, Ohio, residence of Samson Primm. Residual quantities of unburnt marijuana were recovered. A field test for the presence of marijuana was conducted with positive results.

40. On April 7, 2016, law enforcement authorities, including a DEA Special Agent, conducted a trash pull at the Huntington Lane, Cleveland Heights, residence of Samson Primm. Residual quantities of unburnt marijuana were recovered. A field test for the presence of marijuana was conducted with positive results.

41. On April 14, 2016, law enforcement authorities, including a DEA Special Agent, conducted a trash pull at the Huntington Lane, Cleveland Heights, residence of Samson Primm. Residual quantities of unburnt marijuana were recovered. A field test for the presence of marijuana was conducted with positive results.

42. On April 21, 2016, law enforcement authorities, including a DEA Special Agent, conducted a trash pull at the Huntington Lane, Cleveland Heights, residence of Samson Primm. Residual quantities of unburnt marijuana were recovered. A field test for the presence of marijuana was conducted with positive results.

43. On May 5, 2016, law enforcement authorities, including a DEA Special Agent, conducted a trash pull at the Huntington Lane, Cleveland Heights, residence of Samson Primm.

Residual quantities of unburnt marijuana were recovered. A field test for the presence of marijuana was conducted with positive results.

44. On May 12, 2016, law enforcement authorities, including a DEA Special Agent, conducted a trash pull at the Huntington Lane, Cleveland Heights, residence of Samson Primm. Residual quantities of unburnt marijuana were recovered. A field test for the presence of marijuana was conducted with positive results.

45. On May 19, 2016, law enforcement authorities, including a DEA Special Agent, conducted a trash pull at the Huntington Lane, Cleveland Heights, residence of Samson Primm. Residual quantities of unburnt marijuana were recovered. A field test for the presence of marijuana was conducted with positive results.

46. On May 26, 2016, law enforcement authorities, including a DEA Special Agent, conducted a trash pull at the Huntington Lane, Cleveland Heights, residence of Samson Primm. Residual quantities of unburnt marijuana were recovered. A field test for the presence of marijuana was conducted with positive results.

47. On June 9, 2016, law enforcement authorities, including a DEA Special Agent, conducted a trash pull at the Huntington Lane, Cleveland Heights, residence of Samson Primm. Residual quantities of unburnt marijuana were recovered. A field test for the presence of marijuana was conducted with positive results.

48. On June 16, 2016, law enforcement authorities, including a DEA Special Agent, conducted a trash pull at the Huntington Lane, Cleveland Heights, residence of Samson Primm. Residual quantities of unburnt marijuana were recovered. A field test for the presence of marijuana was conducted with positive results.

49. On June 17, 2016, at approximately 5:00 a.m., law enforcement authorities, including a DEA Special Agent, conducted surveillance of Samson Primm at a location in Parma, Ohio. At approximately 5:35 a.m., Primm exited the location. He placed two (2) suitcases in the rear of his 2015 Infinity QX80 SUV and departed the location. Primm entered onto I-480 at Ridge Road, Parma.

50. Members of the Ohio State Highway Patrol (OSHP) participated in this surveillance/investigation.

51. At approximately 5:49 a.m., an OSHP sergeant observed Primm's vehicle traveling westbound on I-480. The vehicle was traveling at approximately 85 mph.

52. As Primm's vehicle exited onto SR 237, it traveled over the yellow fog line on the left side of the road. A traffic stop was initiated.

53. An OSHP trooper made a passenger side approach on the vehicle. While speaking with the driver and only occupant (later identified as Samson Primm), the trooper detected a faint odor of raw marijuana from inside of the vehicle.

54. The OSHP trooper explained to Primm the reason for the traffic stop. Primm denied speeding.

55. When asked where he was headed, Primm advised he was going to the airport to fly to California to watch the [Cleveland Cavaliers vs. Golden State Warriors NBA Finals Game 7] basketball game.

56. The OSHP trooper explained to Primm that he was a canine handler and that he was going to walk his dog ("Drago") around the vehicle. Upon being deployed, "Drago" provided a positive alert for the odor of controlled substances.

57. The OSHP sergeant advised Primm that the K-9 had indicated to the vehicle and that a search of the vehicle would be conducted. Also, the sergeant asked Primm if anyone smoked marijuana in the vehicle. Primm stated that he had some friends in the vehicle the night before and they may have.

58. The OSHP sergeant and trooper conducted a search of the vehicle. A glass jar containing suspected marijuana was located in the center console. The trooper took the jar back to Primm and asked him about it. Primm stated that it had to have been left in the vehicle from one of his friends.

59. Later, a field test of the suspected marijuana was conducted with positive results.

60. The OSHP trooper went back and continued the search. A bundle of U.S. currency, with rubber bands around it, was located in a black bag on the back seat wrapped in a cloth. The trooper asked Primm how much money was in the bag. He stated probably about $9,000.00 but he was not really sure.

61. The back hatch of the vehicle was opened, and the two (2) suitcases were observed. In one of the suitcases, the OSHP sergeant located bundles of U.S. currency inside of shoes. In the second suitcase, the OSHP trooper initially located "a couple" bundles of U.S. currency inside of pants.

62. At this time, the determination was made to tow the vehicle to the Cleveland Highway Patrol Post to continue the search. This determination was made based upon the location of the stop and the amount of traffic that was beginning to build.

63. While waiting on the tow, the OSHP trooper asked Primm how much money he had with him. Primm stated he was not sure.

64. The vehicle was towed to the Cleveland Highway Patrol Post and the search of the vehicle was continued. A total of 10 bundles of U.S. currency was located in the suitcase with the shoes. Six (6) bundles of U.S. currency were located in pants pockets in the suitcase containing clothing. In total, 17 bundles of U.S. currency were recovered.

65. The amount of currency recovered was later determined to be $107,900.00. The breakdown of the currency was as follows: 406 ($100) bills and 1,346 ($50) bills. This $107,900.00 is a defendant property in the instant case.

66. A DEA task force officer arrived on scene and took control of the money.

67. Primm was given a receipt for the recovered currency. Also, Primm was issued a minor misdemeanor summons for the possession of marijuana (later dismissed) and a warning for the speeding violation. Primm was released and drove away from the post.

68. On July 8, 2016, law enforcement authorities, including a DEA Special Agent, conducted a trash pull at the Huntington Lane, Cleveland Heights, Ohio, residence of Samson Primm. Residual quantities of unburnt marijuana were recovered. A field test for the presence of marijuana was conducted with positive results.

69. On July 14, 2016, law enforcement authorities, including a DEA Special Agent, conducted a trash pull at the Huntington Lane, Cleveland Heights, residence of Samson Primm. Residual quantities of unburnt marijuana were recovered. A field test for the presence of marijuana was conducted with positive results.

70. On August 11, 2016, law enforcement authorities, including a DEA Special Agent, conducted a trash pull at the Huntington Lane, Cleveland Heights, residence of Samson Primm. Residual quantities of unburnt marijuana were recovered. A field test for the presence of marijuana was conducted with positive results.

71. On August 18, 2016, law enforcement authorities, including members of the DEA Cleveland Resident Office and members of the Cleveland Heights and Beachwood Police Departments, executed state search warrants at the Huntington Lane, Cleveland Heights, Ohio, residence of Samson Primm.

72. Samson Primm's wallet – containing his Ohio driver's license and other identification cards - was located on the dresser in his bedroom and his 2015 Infinity QX80 SUV was parked in the attached garage. Among other things, officers seized the following items pursuant to the execution of the search warrants:

- a.) approximately 10 pounds of marijuana was found in a suitcase in the laundry room.

- b.) $57,999.00 U.S. Currency. This $57,999.00 is a defendant property in the instant case.

- c.) approximately six (6) pieces of jewelry that, from current estimates, appear to be valued at several hundred thousand dollars.

- d.) items commonly used in the preparation of drugs for sale, to include scales, a money counter, vacuum sealer, and numerous boxes of food saver bags and rolls of vacuum seal packaging.

- e.) two (2) vacuum sealed packages and two (2) jars containing a resale quantity (approximately 1/2 pound) of marijuana.

- f.) jar containing approximately 3.55 grams of marijuana. This marijuana was recovered from the center console of Primm's 2015 Infinity QX80 SUV. The jar was located underneath a substantial quantity of U.S. currency.

- g.) approximately 1.34 grams of methylone ("bath salt"), a Schedule 1 controlled substance.

- h.) numerous cellular telephones.

73. The "street value" of a pound of marijuana is conservatively estimated at $3,000.00.

## FINANCIAL INFORMATION

74.     Samson Primm has not filed Ohio personal income tax returns for the years 2012, 2013, and 2015.  On his 2014 Ohio personal income tax return, Primm claimed federal adjusted gross income of $37,410.00.

75.     From January, 2014, to April, 2016, Samson Primm spent over approximately $95,000.00 on transactions/purchases with the following airlines: United, Delta, American Airlines, USAirways, Spirit, Southwest, JetBlue, and CopaAirline Panama.  Particularly, by way of example, Primm made the following airline trips in 2016:

- a.) On January 12, 2016, Primm flew from CLE to LAX (Los Angeles International Airport).
- b.) On January 18, 2016, Primm flew from LAX to CLE.
- c.) On February 26, 2016, Primm flew from CLE to LAX.
- d.) On March 7, 2016, Primm flew from LAX to DEN (Denver International Airport).
- e.) Also on March 7, 2016, Primm flew from DEN to CLE.
- f.) On March 17, 2016, Primm flew from CLE to SFO (San Francisco International Airport).
- g.) Also on March 17, 2016, Primm flew from SFO to LAS (McCarran/Las Vegas International Airport).
- h.) On March 20, 2016, Primm flew from LAS to LAX.
- i.) Also on March 20, 2016, Primm flew from LAX to CLE.
- j.) On July 10, 2016, Primm flew from CLE to LGA (LaGuardia Airport).
- k.) On July 12, 2016, Primm flew from LGA to CLE.
- l.) On July 28, 2016, Primm flew from CLE to LAX.
- m.) On August 2, 2016, Primm flew from LAX to MIA (Miami International Airport).

    n.)    On August 3, 2016, Primm flew from MIA to MDE (Jose Maria Cordova International Airport, located in Medellin/Rionegro, Columbia).

    o.)    On August 7, 2016, Primm flew from MDE to MIA.

    p.)    Also on August 7, 2016, Primm flew from MIA to LAX.

    q.)    On August 9, 2016, Primm flew from LAX to CLE.

76.    Primm's travel patterns are consistent with someone involved in illegal drug trafficking activities. California and the country of Columbia are known source locations for narcotics brought into the Northern District of Ohio.

77.    Between January, 2014, and November, 2015, Primm spent over approximately $25,000.00 on rental cars.

78.    Primm purchased his 2015 Infinity QX80 SUV in November, 2015. The purchase price was $99,006.00. Between at least January, 2016, and April, 2016, Primm's monthly payment on the vehicle was approximately $1,260.00.

79.    From February, 2014, through April, 2016, Primm spent over approximately $40,000.00 in connection with Cleveland Cavaliers related events.

80.    From January, 2014, through February, 2016, Primm spent over approximately $35,000.00 at high-end retail stores across the country, to include stores located in Cleveland, New York, Atlanta, Los Angeles, Las Vegas, Michigan, and Florida.

81.    Between January, 2014, and December, 2015, Primm spent $1,000.00 or more – on approximately 25 separate occasions – at hotels, nightclubs, and/or restaurants across the country; to include the following:

    a.)    On or about February 4, 2014, Primm spent $3,586.09 at the Brasserie Beaumarchais, a restaurant in New York.

    b.)    On or about May 15, 2014, Primm spent $3,014.20 at the Fontainebleau Resort in Miami Beach, Florida.

c.) On or about September 16, 2014, Primm spent $3,966.58 at the Cosmopolitan Hotel/Casino in Las Vegas.

d.) On or about October 27, 2014, Primm spent $2,627.47 at the Corner Alley in Cleveland, Ohio.

e.) On or about February 1, 2015, Primm spent $1,800.00 at the Pink Rhino, a "gentlemen's club" in Phoenix, Arizona.

f.) On or about February 17, 2015, Primm spent $4,388.66 at the Trump SoHo, a hotel in New York.

g.) On or about May 6, 2015, Primm spent $3,327.97 at the Cosmopolitan Hotel/Casino in Las Vegas.

h.) On or about May 26, 2015, Primm spent $6,233.78 at the Gansevoort Park Avenue NYC, a hotel in New York.

i.) On or about July 17, 2015, Primm spent $2,266.05 at The Ritz-Carlton Kapalua, a hotel/resort in Kapalua, Hawaii.

j.) On or about July 29, 2015, Primm spent $4,294.54 at The Ritz-Carlton Kapalua, a hotel/resort in Kapalua, Hawaii.

k.) On or about August 21, 2015, Primm spent $1,992.05 at the Hotel Derek in Houston, Texas.

l.) On or about November 11, 2015, Primm spent $4,319.19 at the 1 Oak LA, a nightclub in Los Angeles.

m.) On or about November 13, 2015, Primm spent $2,126.84 at the Fontainebleau Resort in Miami Beach, Florida.

n.) On or about December 7, 2015, Primm spent $1,152.15 at the Fontainebleau Resort in Miami Beach, Florida.

## CONCLUSION

82. By reason of the foregoing, the defendant $99,500.00 U.S. Currency, the defendant $107,900.00 U.S. Currency, and the defendant $57,999.00 U.S. Currency are subject to forfeiture to the United States under 21 U.S.C. § 881(a)(6) in that they constitute proceeds from illegal drug trafficking activities, and/or were used or were intended to be used in exchange

for illegal controlled substances, and/or were used or were intended to be used to facilitate illegal drug trafficking activities.

WHEREFORE, plaintiff, the United States of America, requests that this Court enter judgment condemning the defendant properties and forfeiting them to the United States, and providing that the defendant properties be delivered into the custody of the United States for disposition according to law, and for such other relief as this Court may deem proper.

                                            Respectfully submitted,

                                            Carole S. Rendon
                                            U.S. Attorney, Northern District of Ohio

By: _____
       James L. Morford (Ohio: 0005657)
       Assistant United States Attorney, N.D. Ohio
       400 United States Court House
       801 West Superior Avenue
       Cleveland, Ohio  44113
       216.622.3743 / Fax: 216.522.7499
       James.Morford@usdoj.gov

## VERIFICATION

STATE OF OHIO            )
                         ) SS.
COUNTY OF CUYAHOGA )

I, James L. Morford, under penalty of perjury, depose and say that I am an Assistant United States Attorney for the Northern District of Ohio, and the attorney for the plaintiff in the within entitled action. The foregoing Complaint in Forfeiture is based upon information officially provided to me and, to my knowledge and belief, is true and correct.

_____
James L. Morford (Ohio: 0005657)
Assistant United States Attorney, N.D. Ohio

Sworn to and subscribed in my presence this 30th day of September, 2016.

_____
Notary Public

MELANIE KATE SANDS
Notary Public, State of Ohio
My Commission Expires May 6, 2020