**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **United States of America,** | ) | **CASE NO. 1:16 CV 2422** |
| | ) | |
| **Plaintiff,** | ) | **JUDGE PATRICIA A. GAUGHAN** |
| | ) | |
| Vs. | ) | |
| | ) | |
| **$99, 500 in U.S. Currency,** *et al.* | ) | **Memorandum of Opinion and Order** |
| | ) | |
| **Defendants.** | ) | |

### INTRODUCTION

This is a civil forfeiture action. Pending before the Court is the United States' Motion for Summary Judgment on the Issue of Standing (Doc. 50) and the Cross-Motion for Summary Judgment (Doc. 52) filed by claimant Samson Primm. For the reasons that follow, the government's motion is GRANTED, and claimant's cross-motion is DENIED.

**FACTS**[1]

**A. The defendant currencies**

Claimant has a long criminal history relating to drugs. In March of 2016, the Drug Enforcement Administration ("DEA") began investigating him for drug trafficking and money laundering offenses. The DEA received information that claimant was scheduled for one-way air travel from Las Vegas, Nevada, to Cleveland, Ohio, on March 20, 2016. A DEA special agent observed him leaving the airport on this date. The DEA then requested assistance from the Lorain Police Department ("LPD"). An LPD officer conducted a traffic stop of claimant's vehicle for a window tint violation. After speaking with claimant, the officer requested that a K-9 officer respond to the scene. The K-9 officer and his K-9 partner, Garp, arrived while the warning citation for the window tint violation was being written. Upon being deployed, Garp provided a positive alert for a narcotic odor. Following the alert, four bags were removed from the vehicle. Garp alerted to a suitcase and backpack where stacks of money were found. In total, $99,500 in U.S. currency was recovered. Claimant claimed to have won the money at the Cosmopolitan casino in Las Vegas.

On June 17, 2016, an Ohio State Highway Patrol ("OSHP") sergeant paced claimant's vehicle traveling at 85 miles per hour on the highway. A K-9 trooper initiated a traffic stop. When he spoke with claimant, he smelled marijuana from inside the vehicle. He then retrieved his K-9 partner, who provided a positive alert for controlled substances. Two OSHP officers then conducted a search of the vehicle, locating a jar that contained marijuana in the center console.

---

[1] The facts are taken from claimant's verified claim and answer, the government's verified complaint, and the affidavit of DEA Special Agent Joseph Harper.

They also found several bundles of U.S. currency inside the vehicle and two suitcases in the back hatch that also contained currency. In total, $107,900 was located in the vehicle.

Pursuant to a state search warrant, law enforcement authorities, including members of the DEA and local law enforcement, executed a search of claimant's residence on August 18, 2016. The officers observed jars containing marijuana in the residence. After testing and confirming the presence of marijuana, the investigators stopped the search and obtained a state narcotics search warrant. The narcotics search warrant named a number of items to be searched and seized, including marijuana, narcotic drugs, money, and weapons. Among other things, officers seized $57,999 in U.S. currency.[2]

**B. The forfeiture action**

The government filed this forfeiture action on October 3, 2016, pursuant to 21 U.S.C. § 881(a)(6), alleging that the defendant currency (the $99,500, $107,900, and $57,999 in U.S. currency seized by law enforcement) constitutes proceeds from illegal drug trafficking, was furnished or intended to be furnished in exchange for illegal drugs, and/or was used or intended to be used to facilitate illegal drug trafficking activities. Notice of the forfeiture action was served on claimant's counsel, and warrants taking custody of the seized funds were executed by the U.S. Marshal Service.

In its verified complaint, the government alleges that, between January of 2014 and August of 2016, claimant lost approximately $59,500 while gambling at the Cosmopolitan of Las Vegas. It also alleges that claimant did not file Ohio personal income tax returns for the years

---

[2] The government's verified complaint does not allege that claimant asserted ownership over the money that was seized on June 17, 2016 and August 18, 2016.

2012, 2013, and 2015, and that his 2014 Ohio personal income tax return claimed a federal adjusted gross income of $37,410. Finally, it alleges that from January of 2014 to April of 2016, claimant made a number of large expenditures on airline tickets, hotels, cars, rental cars, sporting events, high-end retail stores across the country, nightclubs, and restaurants.

Claimant filed a verified claim swearing that he was the "sole and absolute owner of the monies" and "was in exclusive possession of these monies when they were seized." His separate answer claims sole ownership and exclusive possession of the currency but then denies all of the government's pertinent allegations regarding the seizure of the money, including that the currency was taken from his possession and that he won the money while gambling.

The government moved to strike both claims because they raised only bald assertions of ownership. It argued that such assertions were insufficient to meet the statutory requirements of Rule G of the Federal Rules of Civil Procedure's Supplemental Rules for Admiralty or Maritime Claims and Civil Forfeiture Actions (the "Supplemental Rules"). This Court granted the motion to strike, and the claimants appealed. Relying on its decision in *United States v. $31,000 in U.S. Currency*, 872 F.3d 342(6th Cir. 2017), the Sixth Circuit reversed. In *$31,000 in U.S. Currency*, the court decided, as an issue of first impression in this circuit, that "[a]t the pleading stage, a verified claim of ownership is sufficient to satisfy Article III [standing requirements] and the procedural requirements of Rule G." *Id.* at 351.

### C. Discovery on remand

On remand, this Court held a case management conference on January 11, 2018, and set a discovery deadline of May 15, 2018, and a dispositive motion deadline of June 15, 2018. The government served special interrogatories and requests for production of documents to

4

claimant's counsel on January 25, 2018. The discovery sought information about the nature of claimant's interest in the defendant currencies, the source of the defendant currencies, and claimant's legitimate sources of income, if any.

Claimant did not respond to the discovery requests. Instead, he filed an "Opposition to Government's First Set of Interrogatories and Request for Production of Documents."[3] In the opposition, he implied that he was not required to respond to the requests until the government survives his motion to suppress and proves that the defendant currencies are subject to forfeiture. He also attached an affidavit stating that he was asserting his Fifth Amendment right in response to the requests but that also implied he was reserving the right to supplement his responses after the Court ruled on his motion to suppress and determined forfeitability of the seized property. This Court entered an order on March 9, 2018, explaining that the law did not support claimant's assertion that he can wait to respond to discovery in this way and that discovery would proceed as scheduled. Because it was not clear if claimant was asserting a blanket Fifth Amendment privilege to the discovery requests, the Court ordered the claimant to clarify whether he was doing so or if he intended to respond to the outstanding requests.

In his response to the Court's order, claimant stated that he would respond to any question that would not tend to incriminate him. He ended his brief, however, by once again suggesting that he did not need to respond to any discovery until after the government proves that the currency at issue was lawfully seized and is forfeitable. He did not file any responses to the government's discovery requests.

---

[3] Claimant never filed a motion to stay this civil forfeiture proceeding pursuant to 18 U.S.C. § 981(g)(2) or argue that it applies to this case.

The government then filed a motion to compel claimant's responses to the outstanding discovery. The Court granted the motion on April 20, 2018, holding that the Federal Rules of Civil Procedure applied to the government's discovery requests and that no authority existed for claimant's position that he did not have to respond to the requests until after the government proved that the property was lawfully seized and forfeitable. The Court ordered claimant to respond to the requests by April 27, 2018, and noted that he could assert the Fifth Amendment privilege against self-incrimination in response to the requests if he wished to do so. Once again, claimant did not file any responses.

The government next moved to strike claimant's claim and answer for failing to respond to its discovery requests, relying on the discovery sanctions available under Rule 37(b)(2)(A) of the Federal Rules of Civil Procedure. Claimant filed an opposition in which he stated that he had all along asserted his Fifth Amendment privilege in response "to all questions put to him, and, [that] he will continue to do so. To be sure, he has also asserted his Fifth Amendment privilege with reference to his being compelled to produce any documents." (Doc. 42, at 1). Because claimant had finally made clear that he was asserting the Fifth Amendment in response to all discovery, the Court denied the government's motion to strike.

The government thereafter filed a motion for summary judgment on the merits. Later, it filed an unopposed motion for leave to file a second motion for summary judgment on the issue of standing. This Court granted the motion for leave. The government's motion on standing, which claimant opposes, is now before the Court. Claimant has also filed a cross-motion for summary judgment, which the government opposes.

## **SUMMARY JUDGMENT STANDARD**

Summary Judgment is appropriate when no genuine issues of material fact exist and the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986) (citing Fed. R. Civ. P. 56(c)); *see also LaPointe v. UAW, Local 600*, 8 F.3d 376, 378 (6th Cir. 1993). The burden of showing the absence of any such genuine issues of material facts rests with the moving party:

> [A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits," if any, which it believes demonstrates the absence of a genuine issue of material fact.

*Celotex*, 477 U.S. at 323 (citing Fed. R. Civ. P. 56(c)). A fact is "material only if its resolution will affect the outcome of the lawsuit." *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986). Accordingly, the nonmoving party must present "significant probative evidence" to demonstrate that "there is [more than] some metaphysical doubt as to the material facts." *Moore v. Philip Morris Cos., Inc.*, 8 F.3d 335, 340 (6th Cir.1993). The nonmoving party may not simply rely on its pleading, but must "produce evidence that results in a conflict of material fact to be solved by a jury." *Cox v. Kentucky Dep't. of Transp.*, 53 F.3d 146, 150 (6th Cir. 1995).

The evidence, all facts, and any inferences that may permissibly be drawn from the facts must be viewed in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Eastman Kodak Co. v. Image Technical Servs., Inc.*, 504 U.S. 451, 456 (1992). However, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252.

Summary judgment should be granted if a party who bears the burden of proof at trial does not establish an essential element of his case. *Tolton v. American Biodyne, Inc.*, 48 F.3d 937, 941 (6th Cir. 1995) (citing *Celotex*, 477 U.S. at 322). Moreover, if the evidence is "merely colorable" and not "significantly probative," the court may decide the legal issue and grant summary judgment. *Anderson*, 477 U.S. at 249-50 (citation omitted).

**LAW AND ANALYSIS**

**A. The government's motion for summary judgment**

In its motion for summary judgment, the government argues that claimant has failed to meet his burden of establishing standing at the summary judgment stage. The Court agrees.

1. Standing in civil forfeiture cases

In a civil forfeiture action, a person who wishes to intervene and assert an interest in the property must file two responsive pleadings: a verified claim and an answer. 18 U.S.C. § 983(a)(4)(A), (B); Supp. R. G(5). The verified claim must "identify the specific property claimed," "identify the claimant and state the claimant's interest in the property," and "be signed by the claimant under penalty of perjury." Supp. R. G(5)(a)(i). Supplemental Rule G(6)(a) allows the government to serve special interrogatories seeking information related to the claimant's identity and relationship to the defendant currency. The purpose of the rule is "to permit the government to file limited interrogatories at any time after the claim is filed to gather information that bears on the claimant's standing." Supp. R. G advisory committee's note (subdivision (6)).

At any time before trial, the government may move to strike the claimant's claim or answer "(A) for failing to comply with Rule G(5) or (6), or (B) because the claimant lacks

8

standing." Supp. R. G(8)(c). The motion "may be presented as a motion for judgment on the pleadings or as a motion to determine after a hearing or by summary judgment whether the claimant can carry the burden of establishing standing by a preponderance of the evidence." Supp. R. G(8)(c)(ii)(B).

As in any case, standing is a threshold matter in an in rem civil forfeiture proceeding. *See, e.g., United States v. $8,440,190.00 in U.S. Currency*, 719 F.3d 49, 57 (1st Cir. 2013). Thus, before the Court can address any other issue that claimant raises, he must meet his burden of establishing Article III standing at this stage of the proceedings.

As an initial matter, the Court rejects claimant's argument that the government cannot challenge standing because the Sixth Circuit's decision on the issue is "law of the case." (Doc. 52, at 6). This argument is incorrect because the court held only that the claimant had Article III standing at the pleadings stage. *See McKenzie v. BellSouth Telecommunications, Inc.*, 219 F.3d 508, 513 (6th Cir. 2000) ("Accordingly, our holding on a motion to dismiss does not establish the law of the case for purposes of summary judgment, when the complaint has been supplemented by discovery.").

The Sixth Circuit's conclusion rested entirely on its earlier decision in *$31,000 in U.S. Currency*, which, like this case, was at the pleading stage when it was dismissed. As the Sixth Circuit explained in *$31,000 in U.S. Currency*, its decision related to the claimant's ability to establish standing at that early stage, *not* at a later stage of the proceedings where the preponderance of the evidence burden applies:

> For the sake of completeness, we note that we have construed the government's motion to strike as one made "on the pleadings" pursuant to Rule G(8)(c)(ii)(B)….We do not address the "preponderance of the evidence" burden of proof here, because that standard is inapplicable in a review of the pleadings in

9

> which the claimant need only allege, rather than prove, the facts establishing his standing to pursue the claim. *Cf. Lujan*, 504 U.S. at 561-62, 112 S.Ct. 2130; *$196,969 U.S. Currency*, 719 F.3d at 646.

*United States v. $31,000.00 in U.S. Currency*, 872 F.3d 342, 352 n.3 (6th Cir. 2017). *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561, 112 S.Ct. 2130 (1992) (holding that the elements of standing "must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, *i.e.,* with the manner and degree of evidence required at the successive stages of the litigation"). Because the Sixth Circuit's decision was limited to a determination of whether claimant met his burden of establishing Article III standing and the requirements of Rule G at the pleadings stage, it does not preclude the government from arguing that he fails to meet his burden on summary judgment.

To meet Article III's case-or-controversy requirement, a claimant must establish the three elements of standing: an injury in fact, a causal connection between the injury and the conduct complained of, and a likelihood that the injury will be redressed by a favorable decision. *Lujan,* 504 U.S. at 560–61. The evidentiary requirements for establishing standing vary depending on the stage of the litigation. *Id.* at 561. To withstand a motion for summary judgment on lack of standing, a plaintiff cannot rely on mere allegations but rather must "'set forth' by affidavit or other evidence 'specific facts,' which for purposes of the summary judgment motion will be taken to be true." *Id.* (citation omitted).

Applying these principles to civil forfeiture actions, courts have used the "'colorable interest' test, which requires a claimant to present 'some evidence of ownership' beyond the mere assertion of an ownership interest in the property." *United States v. Phillips*, 883 F.3d 399, 403 (4th Cir. 2018) (noting that "[e]very court of appeals that has addressed the issue in the last

10

twenty years has used the 'colorable interest' test") (citing cases from the First, Second, Third, Fifth, Sixth, Seventh, Eighth, Ninth, Tenth, and D.C. Circuits). Under the colorable interest test, "Article III's standing requirement is … satisfied because an owner or possessor of property that has been seized necessarily suffers an injury that can be redressed at least in part by the return of the seized property." *United States v. $515,060.42,* 152 F.3d 491, 497 (6th Cir.1998).

In cases such as this one where a claimant asserts an ownership interest—as opposed to a possessory interest—"[t]he required ownership interest can be demonstrated in a variety of ways, 'including showings of actual possession, control, title and financial stake." *U.S. v. $148,840.00 in U.S. Currency*, 521 F.3d 1268, 1275 (10th Cir. 2008). Courts consistently hold that claimants who assert an ownership interest in property that was seized from their possession have Article III standing at the summary judgment stage to challenge the forfeiture. *See, e.g., id.* (holding that claimant had standing at summary judgment stage "because [his] assertion of ownership is assumed to be true on this record, and because the currency was indisputably seized from a vehicle that Austin was driving"); *United States v. $38,570 in U.S. Currency*, 950 F.2d 1108, 1112-3 (5th Cir. 1992) (holding that claimant who asserted an ownership interest had constitutional standing to challenge the forfeiture of currency seized from a car that he was driving); *see also U.S. v. $133,420.00 in U.S. Currency*, 672 F.3d 629, 640 (9th Cir. 2012) ("[An] assertion of ownership, combined with [the claimant's] possession of the currency at the time it was seized, would be enough to establish [his] standing for purposes of a motion for summary judgment.").

2. Effect of claimant invoking Fifth Amendment in response to all discovery requests

11

Here, assuming the Court were to consider all of the evidence in the record, it would include the claimant's unequivocal claim of ownership in his verified claim and answer and the government's own verified complaint stating that the currency was found in his possession. The government, however, argues that the Court should not consider the claimant's assertion of ownership in his verified claim and answer because he chose to exercise his Fifth Amendment privilege rather than respond to the government's discovery requests, which were directed at determining the legitimacy of the claimant's naked assertions of ownership. Without evidence of a claim of ownership, claimant cannot establish standing.[4]

Circuit courts agree that "a district court may strike conclusory testimony if the witness asserts the Fifth Amendment privilege to avoid answering relevant questions, yet freely responds to questions that are advantageous to his cause." *$148,840.00 in U.S. Currency,* 521 F.3d at 1277 (citing *United States v. 4003–4005 5th Ave.,* 55 F.3d 78, 84–85 (2d Cir.1995) ("If it appears that a litigant has sought to use the Fifth Amendment to abuse or obstruct the discovery process, trial courts, to prevent prejudice to opposing parties, may adopt remedial procedures or impose sanctions."); *United States v. Parcels of Land,* 903 F.2d 36, 43 (1st Cir.1990) (holding in a civil forfeiture action that "a witness' direct testimony can be stricken if she invokes the fifth amendment on cross-examination to shield that testimony from scrutiny")); *see also U.S. v. $110,873.00 in U.S. Currency*, 159 Fed. Appx. 649, 653 (6th Cir. 2005) ("[Claimant] had an opportunity to present his side of the case, and he simply chose to remain silent—a perfectly

---

[4] Claimant does not address the government's argument that the Court should strike his naked assertion of ownership because he failed to answer any discovery directed at determining the legitimacy of that assertion. Instead, he argues that the Court cannot draw an adverse inference from the assertion of the privilege. Because the government has not asked for an adverse inference, the Court need not address this argument.

constitutional option but one that he may not leverage into a basis for avoiding the requirements of Rule 56 of the Federal Rules of Civil Procedure."); *United States v. Certain Real Property 566 Hendrickson Boulevard,* 986 F.2d 990, 996 (6th Cir.1993) ("Claimant cannot avoid completely his Rule 56 burden by merely asserting a Fifth Amendment privilege.").

In *$133,420.00 in U.S. Currency*, for example, the claimant invoked his Fifth Amendment privilege to avoid answering an interrogatory question as to the "date(s), time, place and manner in which the defendant currency [ ] was obtained" and the "circumstances of each transaction by which [he] acquired or obtained any interest in the defendant currency." 672 F.3d at 636. He did, however, provide a limited response stating that he was the "owner and possessor of said property, with a right to exercise dominion and control over said property." *Id.* at 637. Because he had frustrated the government's attempts to test the veracity of his claim of ownership, the district court struck this response, which left him with no evidence that he had made a claim of ownership to the property. *Id*. Without a claim of ownership, he could not establish standing, so the district court granted summary judgment in favor of the government.[5] The Ninth Circuit affirmed, agreeing that the claimant had "impaired the truth-seeking function of the judicial process" by invoking the Fifth Amendment in response to the government's interrogatories. *Id.* at 642. As such, the district court did not abuse its discretion in striking the claimant's response.

The Tenth Circuit has also noted that a district court has the discretion to strike a claim of ownership where a claimant chooses to invoke the Fifth Amendment privilege rather than

---

[5] His verified claim asserted that he had an "ownership and/or possessory" interest in the seized currency, which was insufficient to establish standing because it did not make clear whether he was asserting a possessory interest or an ownership interest. *Id.* at 640.

13

respond to the government's discovery regarding how he came into such ownership. In *$148,840.00 in U.S. Currency,* the claimant testified in his deposition that the currency, which had been seized from a vehicle that he was driving, was his. He invoked the Fifth Amendment, however, when the government attempted to discover the nature of his ownership. The government moved for summary judgment, arguing that the claimant failed to establish standing. It did not move to strike the claimant's deposition testimony regarding his claim of ownership, so the district court considered the testimony in ruling on the motion. Because the claimant had made a claim of ownership and the money was seized from a vehicle that he was driving, the court held that he had standing. The Tenth Circuit affirmed because the evidence remained in the record, but explained that "[t]his would, of course, be a different case if the district court had exercised its discretion to strike Austin's claim of ownership to the currency in light of his repeated invocation of the Fifth Amendment privilege." 521 F.3d at 1277.

On remand in *$31,000 in U.S. Currency*, this Court struck the claimants' claim of ownership because they repeatedly invoked the Fifth Amendment in response to the government's discovery requests:

> Here, the Court agrees with the government that claimants should not be permitted to use the Fifth Amendment as a way of frustrating the government's attempt to determine the nature of their asserted ownership interest. Indeed, in rejecting the government's argument that a claimant should be required to spell out his interest in the seized property at the outset of a case, the Sixth Circuit specifically noted that the government has at its disposal special interrogatories that are for the very purpose of discovering the veracity of a claim of ownership: "We have no doubt that the lawyers of the United States Attorney's Offices within the Sixth Circuit have the capacity to draft useful interrogatories that will either confirm a claimant's interest in the *res* or expose the futility of the claim." *$31,000 in U.S. Currency*, 872 F.3d at 354. By repeatedly invoking the Fifth Amendment, however, the claimants have obstructed the discovery process and made it impossible for the government to use special interrogatories or any other type of discovery to test the truthfulness of their naked assertions of ownership.

14

> *See also United States v. Parcels of Land*, 903 F.2d 36, 43 (1st Cir. 1990) ("[T]he power to strike is grounded in the principle that once a witness testifies, she may not invoke the fifth amendment privilege so as to shield that testimony from scrutiny. To allow her to do so would constitute a positive invitation to mutilate the truth.") (internal quotations and citations omitted).
>
> Because claimants' claim of privilege "raises the core concern" that their testimony could furnish them with what may be false evidence and prejudice the government by depriving it of any means of detecting the falsity, the Court will strike their assertions of ownership in their verified claims. *$133,420.00 in U.S. Currency*, 672 F.3d at 642. That leaves the record devoid of any claim of ownership to the seized currency. Without a claim of ownership, the claimants are unable to meet their burden of establishing standing at the summary judgment stage.

*United States v. $31,000 in U.S. Currency*, No. 1:16 CV 1581, at 13-14 (N.D. Ohio May 23, 2018); *see also United States v. $23,000 in U.S. Currency*, No. 16 CV 2140 (N.D. Ohio June 19, 2018) (Nugent, J.) (granting summary judgment to government where claimant invoked Fifth Amendment in response to government's special interrogatories and provided no other form of evidence to support his claim of ownership).

Claimant in this case makes a naked claim of ownership as to two of the amounts at issue (the $107,900 seized on June 17, 2016 and the $57,999 seized on August 18, 2016)–he has never stated how or where he earned this money. Although he claimed to have won the $99,500 seized on March 20, 2016 while gambling at the Cosmopolitan, the government's verified complaint alleges that he actually *lost* $59,500 at the casino. In addition, it alleges that he filed no Ohio personal income tax returns for 2012, 2013, and 2015, and that his 2014 Ohio personal income tax return claimed a federal adjusted gross income of only $37,410. Thus, its discovery requests were properly aimed at determining whether claimant's assertion of ownership was legitimate or fraudulent. Indeed, the Sixth Circuit recognized in *$31,000 in U.S. Currency* that the government has every right to propound interrogatories to "either confirm a claimant's interest in the res or

15

expose the futility of the claim." 872 F.3d at 354. *See also $133,420.00 in U.S. Currency*, 672 F.3d at 642 ("The issue of standing is subject to adversarial testing under Supplemental Rule G(6)(a), which gives the government the right to question the claimant regarding the claimant's identity and relationship to the defendant property, and to gather information that bears on the claimant's standing[.]"). If the claimant were found to have standing even after he refused to answer any of the government's discovery requests that bear on standing, that would deprive the government of the adversarial testing to which it is entitled and simply take claimant at his conclusory word.

As this Court found in *$31,000 in U.S. Currency*, claimant's assertion of privilege "raises the core concern" that his testimony could furnish him with what may be false evidence and prejudice the government by depriving it of any means of detecting the falsity. *$133,420.00 in U.S. Currency*, 672 F.3d at 642. The Court therefore strikes his conclusory assertions of ownership in his verified claim and answer. That leaves him with an unexplained claim of possession, which is insufficient to meet his burden of establishing standing at the summary judgment stage.

As noted, claimant's primary argument with respect to standing is that the Sixth Circuit's decision was law of the case. The rest of his response raises issues that the Court need not consider because he lacks standing (e.g., the forfeiture violates the Takings Clause of the Fifth Amendment and the Excessive Fines Clause of the Eighth Amendment; his Fourth Amendment rights were violated during the seizures; and the complaint fails to connect the defendant currencies with any criminal offense).

### B. Claimant's motion for summary judgment[6]

In his motion for summary judgment, claimant contends that this Court does not have *in rem* jurisdiction over the defendant currencies because the State of Ohio has *in rem* jurisdiction over them. This is incorrect. It is well established that "the court first assuming jurisdiction over the property may maintain and exercise that jurisdiction to the exclusion of the other.' ... Hence, 'a court cannot exercise jurisdiction over a *res* that is already subject to the *in rem* jurisdiction of another court.'" *United States v. Cunningham*, 520 F. App'x 413, 415 (6th Cir. 2013) (quoting *Penn General Casualty Co. v. Pennsylvania,* 294 U.S. 189, 195, 55 S.Ct. 386, 79 L.Ed. 850 (1935); *United States v. Certain Real Property 566 Hendrickson Blvd.,* 986 F.2d 990, 993 (6th Cir.1993)). Thus, where a federal district court is the first to assume jurisdiction over the currency, it has *in rem* jurisdiction. *Id.* This is true even if the property was originally seized by state officers and held by the state prior to the United States ultimately taking possession. *U.S. v. $22,832.00 in U.S. Currency*, 2013 WL 4012712 (N.D. Ohio Aug. 6, 2013) (citing *United States v. $174,206.00 in U.S. Currency*, 320 F.3d 658, 660 (6th Cir. 2003) ("[t]he mere fact that the *res* was at one point in the state's possession does not imply that it was the basis of the state court's jurisdiction").

In this case, the state never instituted an *in rem* forfeiture action against any of the defendant currencies. Accordingly, the state never had *in rem* jurisdiction over the properties. Because this Court was the first to assume jurisdiction over the currencies, it has *in rem* jurisdiction.

---

[6] Claimant again argues in his motion for summary judgment that the currencies were not lawfully seized and that the government cannot show that the currency was related to any criminal offense. Because claimant lacks standing, the Court need not address these issues.

**CONCLUSION**

For the foregoing reasons, the claimant lacks standing to contest the forfeiture of the defendant currencies. The United States' Motion for Summary Judgment on the Issue of Standing (Doc. 50) is, therefore, GRANTED. Claimant's Motion for Summary Judgment (Doc. 52) is DENIED.

IT IS SO ORDERED.


                                         **/s/ Patricia A. Gaughan**
                                         PATRICIA A. GAUGHAN
                                         United States District Court
Dated: 9/20/18                       Chief Judge